UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Pradeep Gupte,<br><br>                  Plaintiff,<br><br>v.<br><br>Uber Technology,<br><br>                  Defendant. | Civil No. 3:24-cv-02037 (VAB)<br><br>March 24, 2025 |

**RECOMMENDED RULING ON REVIEW UNDER 28 U.S.C. § 1915**

**I.   INTRODUCTION**

This is a lawsuit filed by Pradeep Gupte, proceeding *pro se*, against Uber Technology ("Uber"). (Compl., ECF No. 1, at 1.) Mr. Gupte seeks damages for alleged discrimination against him, arising out of Uber's terminating his employment and blocking his account in 2018. He has moved for leave to proceed *in forma pauperis*, or "IFP." (ECF No. 2.)

When a plaintiff seeks permission to begin a lawsuit IFP – that is, without paying the filing fee – the court ordinarily conducts two inquiries. First, it reviews the plaintiff's financial affidavit and determines whether he is unable to pay the fee. 28 U.S.C. § 1915(a). Second, to ensure that the plaintiff is not abusing the privilege of filing a free lawsuit, the court examines his complaint to determine whether it "is frivolous" or "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii). If the complaint is indeed frivolous or fails to state a claim, the court must dismiss the case. *Id.*

United States District Judge Victor A. Bolden referred this case to me – United States Magistrate Judge Thomas O. Farrish – to conduct these two inquiries. (ECF No. 18.) I have thoroughly reviewed the complaint and the IFP motion. In the first step of my analysis, I conclude

1

that the motion for leave to proceed IFP should be granted, because Mr. Gupte has demonstrated that he is unable to pay the filing fee. (See discussion, Section III *infra*.) In the second step, I recommend that the claims in Mr. Gupte's current complaint be dismissed with leave to amend. (*See* discussion, Sections IV & V *infra*.)

## II.    BACKGROUND

This is Mr. Gupte's second lawsuit arising out of the termination of his employment at Uber. He previously brought suit in Connecticut small claims court in March of 2024. *See Gupte, Pradeep v. Uber Technology*, TTD-CV24-5017852-S [hereinafter *Gupte I*]. Because he has referenced the prior litigation several times in his filings before this Court, it is necessary to set forth the factual and procedural background for both matters.

Mr. Gupte filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on or about June 5, 2023. *Gupte I*, Entry No. 114.00 at 18; *see also Gupte I*, Entry No. 104.00 at 1. In that complaint, Mr. Gupte alleged that he was terminated, "not rehired," not recalled, and retaliated against on the basis of his race, color, religious creed, age, national origin, ancestry, mental disability, physical disability, and sexual orientation. *Gupte I*, Entry No. 114.00 at 18. The narrative portion explained that Mr. Gupte worked as a delivery driver for Uber Eats "about 4 or 5 years ago" and was terminated. *Id.* at 19. After his termination from Uber, he filed for and received unemployment compensation from the Connecticut Department of Labor. *Id.* He alleged that Uber blocked his email account so that he could not apply for a job at Uber again, as retaliation for his filing for unemployment. *Id.* at 18, 19.

The CHRO dismissed Mr. Gupte's complaint after completing a case assessment review. *Gupte I*, Entry No. 104.00 at 1. The CHRO concluded that, because Mr. Gupte was terminated and his Uber account was deactivated on September 3, 2018, his complaint was filed outside of the applicable 300-day statutory period. *Id.* The CHRO also concluded that the complaint failed

to state a claim for relief because it did not "tie any of [Mr. Gupte's] alleged protected class basis to the allegations of discrimination and retaliation . . . ." *Id.* The CHRO released its jurisdiction over the complaint on January 4, 2024. *Id.* at 10. The Equal Opportunity Employment Commission ("EEOC") adopted the CHRO's findings and issued a notice of right to sue letter for the complaint on January 26, 2024. (ECF No. 10 at 2.)

On or around January 30, 2024, Mr. Gupte filed a small claims writ and notice of suit against Uber at the Connecticut Superior Court. *Gupte I,* Entry No. 100.30. The return of service was filed on March 14, 2024. *Gupte I*, Entry Nos. 101.00 and 102.00. Mr. Gupte asserted that his civil rights were violated and that he did not receive a "Loudermill Hearing," attaching the CHRO's case assessment review. *Gupte I*, Entry Nos. 100.30 and 104.00. Uber moved to stay the matter and compel arbitration pursuant to the terms of the arbitration agreement executed by Mr. Gupte. *Gupte I*, Entry No. 113.00. On June 3, 2024, the court granted Uber's motion, staying the proceeding for a period of six months and scheduling a status conference to discuss the status of arbitration after six months passed. *Gupte I*, Entry No. 113.10. According to the terms of the arbitration agreement, Mr. Gupte was required to initiate the arbitration proceedings by delivering an arbitration demand to Uber in writing. *Gupte I*, Entry No. 114.00 at 74. He apparently attempted to initiate arbitration proceedings through the American Arbitration Association (ECF No. 10 at 22; ECF No. 11 at 1), but he did not follow the specific guidelines in the arbitration agreement. On December 2, 2024, Mr. Gupte failed to attend the status conference the court had scheduled to discuss the status of arbitration. *Gupte I*, Entry No. 127.50. On that same day, the court ordered the case dismissed for failure to initiate arbitration in accordance with the terms of the agreement within the period of the stay. *Id.*

On December 20, 2024, Mr. Gupte filed this action. He claimed "Title VII, discrimination." (ECF No. 1 at 2.) He indicated that the case arose out of his termination from Uber in 2018. (*Id*.) He stated that his civil rights were violated and that he was deprived of a Loudermill hearing. (*Id*. at 2, 3.) Approximately two weeks later, he filed his EEOC right to sue letter. (ECF No. 10 at 2.) In the accompanying "notice," he asked that the Court "look at [his] pleadings from CHRO/EEOC" and stated that his case was "dismissed by CHRO because [he] could not connect to Microsoft meeting on Dec 2, 2024." (*Id.* at 1.) Over the next few weeks, he filed multiple "notices" and "exhibits" containing additional documents, several of which had been exhibits for the prior state court proceeding. (*See* ECF Nos. 11, 12, 13, 14, 15, 19, 21, 22.) Other relevant facts will be set forth as necessary below.

### III. THE FIRST INQUIRY: IFP STATUS

When a plaintiff files a complaint in federal court, ordinarily he must pay filing and administrative fees totaling $405. See 28 U.S.C. § 1914. District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson*, 575 U.S. 532, 534 (2015) (explaining that plaintiffs who qualify for in forma pauperis status "may commence a civil action without prepaying fees or paying certain expenses").

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, *see Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam), but he does need to show that "paying such fees would constitute a serious hardship." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007). The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his affidavit demonstrates that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and

4

his dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (quotation marks omitted).

In his application to proceed IFP, Mr. Gupte states that he has only $10 in cash on hand in a savings or checking account. (ECF No. 2 at 5.) He owns no valuable property other than a nine-year-old car. (*Id.*) He receives $1,694 monthly in social security benefits (*id.* at 2, 4) but has $1,693 in monthly living expenses. (*Id.* at 7.) Based on these statements, I conclude that payment of the filing fee "would constitute a serious hardship." *Fiebelkorn*, 77 Fed. Cl. at 62. Mr. Gupte's motion for leave to proceed *in forma pauperis* is therefore **GRANTED**.

IV. **THE SECOND INQUIRY: REVIEW OF THE COMPLAINT**

    A. **General Principles of Review under 28 U.S.C. § 1915**

"A motion to proceed IFP comes with a consequence." *Ortiz v. Tinnerello*, No. 22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023). "Because IFP plaintiffs lack 'an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits' . . . the statute instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims." *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

First, the court must "dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i). A complaint is "frivolous" when it is entirely without a factual or legal basis. As the Court of Appeals has explained, an "action is 'frivolous' for §1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke*, 490 U.S. at 325-27). "Frivolous" complaints include those that are based

5

on "fanciful factual allegation[s]," *Neitzke*, 490 U.S. at 325, as well as those in which a dispositive defense clearly exists "on the face of the complaint." *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

Second, the court must dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint fails to state a claim when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Facial plausibility," in turn, requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When an IFP complaint lacks this "facial plausibility," it is subject to dismissal. 28 U.S.C. § 1915(e)(2)(B)(ii); *Gordon v. Suffolk Cnty.*, 792 F. App'x 128, 129 (2d Cir. 2020) (summary order). Third, "the court shall dismiss the case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii).

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000). In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). Still, even a *pro se* plaintiff must plead a plausible claim. *See Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) ("Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility." (internal citation omitted)).

6

### B. Application of These Principles to Mr. Gupte's Complaint

When reviewing *pro se* IFP complaints under Section 1915(e)(2), courts examine the factual allegations and consider what theories of recovery they suggest, without limiting themselves to the theories expressly identified by the plaintiff. *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (noting that, because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing court's "imagination should be limited only by [the] factual allegations" when determining what legal claims the complaint suggests). In *Emiabata*, for example, the plaintiff asserted six specific claims that were all barred by one sort of immunity or another. 2022 WL 4080348, at *10. But his factual allegations suggested a seventh claim – a civil rights claim under 42 U.S.C. § 1983 – so the Court analyzed that claim as well, even though the plaintiff had not expressly pled it. *Id.* at *11.

Mr. Gupte's complaint expressly claims a Title VII violation. In his subsequent submissions, he asked the Court to "review" 42 U.S.C. §§ 1981 and 1983, as well as "pendant or supplemental claims under Connecticut fair employment practices," Conn. Gen. Stat. § 46a-60. (ECF No. 12, at 1; ECF No. 21.) I have considered what claims his complaint and submissions suggest, and I have identified three: (1) wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*,; the Connecticut Fair Employment Practices Act (the "CFEPA"), Conn. Gen. Stat. § 46a-60; and 42 U.S.C. § 1981;  (2) retaliation in violation of Title VII, the CFEPA, and Section 1981; and (3) violation of his right to due process under the Fourteenth Amendment, actionable through 42 U.S.C. § 1983. But each of these three claims should be dismissed, for the reasons to be discussed below.

#### 1. *Wrongful Termination*

Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of discrimination under Title VII, a plaintiff "must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009). The CFEPA makes it unlawful for an employer to "discharge from employment any individual . . . because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, [or] physical disability." Conn. Gen. Stat. § 46a-60(b)(1). The analysis of discrimination under the CFEPA is "the same as under Title VII." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6, 791 A.2d 518 (2002)). For wrongful termination claims under 42 U.S.C. § 1981, the standards are "similar to those in a wrongful termination claim rooted in Title VII," except that "unlike in Title VII claims, a showing of discriminatory intent on the part of the defendant is required." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 225-26 (E.D.N.Y. 2018).

In order to pursue a Title VII claim, the complainant must file a charge of unlawful employment discrimination with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). If the complainant first submits a complaint to a state agency, as Mr. Gupte did here, the deadline to submit the claim to the EEOC is extended to 300 days from the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *see also Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996). If the complaint is not filed within these time limits, the claim is "time barred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A discriminatory

or retaliatory act occurs "on the day that it 'happened.'" *Id.* at 110. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. Similarly, when pursuing a claim under the CFEPA, "a charge must be filed within 180 days of the alleged unlawful conduct if the conduct occurred before October 1, 2019; if the conduct occurred after October 1, 2019, the charge must be filed within 300 days of when the unlawful conduct occurred." *Collins v. Fed. Express Corp.*, 731 F. Supp. 3d 368, 377 (D. Conn. 2024).

Mr. Gupte's wrongful termination claims under Title VII and the CFEPA are untimely. Mr. Gupte was terminated by Uber on September 3, 2018.[1] *Gupte I*, Entry No. 104.00 at 1. If he wanted to bring a CHRO or EEOC complaint based on his termination, he was required to do so on or before July 1, 2019.[2] Mr. Gupte did not file his complaint by this date, but four years after it.[3] Filing a timely charge with the CHRO or EEOC is not a "jurisdictional prerequisite" to filing

---

[1] Mr. Gupte does not allege the specific date he was terminated. However, he does say in his complaint that he was an Uber driver "during 2018." (ECF No. 1 at 2.) He also submitted a resume showing he was employed at Uber until September 2018. (ECF No. 13 at 3.) Even if the precise date of his termination was in contention, these submissions show that he was terminated in September 2018 at the very latest.

[2] This presumes that Mr. Gupte had 300 days from the date of his termination to file his complaint. Arguably, he had only 180 days to file the charge with either the EEOC or CHRO. *See* 42 U.S.C. § 2000e-5(e)(1) (180 days for claims that were not filed with a state agency first); *Collins*, 731 F. Supp. 3d at 377 (180 days to file with the CHRO for conduct occurring before October 1, 2019). The Court has applied a more generous deadline of 300 days, since, given the amount of time that lapsed between the date of termination and the date Mr. Gupte filed the CHRO complaint, the distinction is immaterial.

[3] The CHRO Case Assessment Review notes that the "statutory period extends to August 9, 2022." *Gupte I*, Entry No. 104.00 at 1. The CHRO was explaining that Mr. Gupte could not bring a claim based on any act that happened more than 300 days before he filed his CHRO complaint—in other words, any act that happened before August 9, 2022. Mr. Gupte asserts that the CHRO dismissed his complaint because he was "1 day late" filing it (ECF No. 10 at 23), presumably because he believes he had 300 days *from* August 9, 2022 to file his CHRO complaint. He is wrong. He was not 1 day late—he was at least 1435 days late.

a lawsuit in federal court, and the requirement can be "subject to waiver, estoppel, and equitable tolling." *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).  But there is no indication here that the requirement should be waived, estopped, or tolled.  Mr. Gupte has not provided any explanation for why his complaint was untimely, nor any reason why the deadline should be equitably tolled.  He does not state that he misunderstood the limitations period and, even if he did, his *pro se* status and "lack of knowledge and education about the law" are not "extraordinary circumstances" warranting equitable tolling.  *Adkins v. Warden*, 585 F. Supp. 2d 286, 297 (D. Conn. 2008), aff'd, 354 F. App'x 564 (2d Cir. 2009).

Mr. Gupte's Section 1981 claim is also untimely.  Section 1981 claims have a four-year statute of limitations.  Though the statute itself does not contain a statute of limitations, 42 U.S.C. § 1981 is subject to the four-year catch-all statute of limitations in 28 U.S.C. § 1658(a). *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-84 (2004) (holding that wrongful termination claims arising out of Section 1981 are governed by the four-year statute of limitations in § 1658).  The statute of limitations began running from the date of Mr. Gupte's termination.  His complaint was filed in this Court on December 20, 2024, over six years after his termination and well after the statute of limitations had run.

While statute of limitations defenses are ordinarily raised by the defendant after it appears, courts can and do dismiss cases on their own initiative under Section 1915(e)(2) when an IFP plaintiff's complaint reveals that his claims are clearly untimely. "[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under [Section 1915(e)(2)], may be based on a defense that appears on the face of the complaint." *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).  For this reason and the reasons explained above, I recommend that

Mr. Gupte's wrongful termination claims under Title VII, the CFEPA, and Section 1981 be dismissed as time barred.

### 2. *Retaliation*

Mr. Gupte also claims that Uber retaliated against him following his termination. He states that he "filed for unemployment and Uber refused to give [him] the benefits," that he "filed for an appeal and the mediator approved [his] benefits," and that Uber "didn't like that and that is why they blocked [his] account." (ECF No. 10 at 19.) In his original complaint before the CHRO, Mr. Gupte asserted that he had applied to Uber "many times until last week," but that Uber did not accept his applications or rehire him because Uber had blocked his email account as a form of retaliation for his applying for unemployment. *Gupte I*, Entry No. 114.00 at 19. The Court reads these allegations as Mr. Gupte asserting claims of retaliation under Title VII, the CFEPA, and Section 1981.

Retaliation claims under Title VII, the CFEPA, and Section 1981 are evaluated under the same standards. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (Section 1981); *Dagenais v. Wal-Mart Stores E., LP*, No. 3:23-cv-241 (SVN), 2023 WL 7220753, at *2 (D. Conn. Nov. 2, 2023) (CFEPA). To state a claim for retaliation under Title VII, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Though a plaintiff's burden here is *de minimis*, it cannot be met through "purely conclusory allegations." *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 246 (S.D.N.Y. 2020) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

Mr. Gupte has not plausibly alleged that he opposed an unlawful employment practice. A plaintiff opposes an unlawful employment practice, thus engaging in "protected activity," when he

11

"protest[s] or oppose[s] statutorily prohibited discrimination." *Siuzdak v. Sessions*, 295 F. Supp. 3d 77, 96 (D. Conn. 2018) (quoting *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 566 (2d Cir. 2000)). This includes actions such as "reporting discrimination, testifying in a proceeding, or otherwise participating in an investigation about discrimination . . . ." *Castro v. Yale Univ*., 518 F. Supp. 3d 593, 611 (D. Conn. 2021). Applying for unemployment benefits does not qualify as a "protected activity," since it is not an action taken to oppose any unlawful employment practice. *See, e.g., Drinks-Bruder v. Niagara Falls Police Club*, No. 22-cv-268 (LJV), 2023 WL 2043833, at *17 (W.D.N.Y. Feb. 16, 2023), reconsideration denied, 2023 WL 3069774 (W.D.N.Y. Apr. 25, 2023) (concluding that "claiming unemployment" was not a protected activity because it was not an action taken "to oppose discriminatory conduct"). Mr. Gupte has not alleged that he made or participated in any complaints about Uber's alleged discrimination, either formally or informally, prior to filing his complaint with the CHRO. In addition, according to his CHRO complaint and his other submissions, Uber blocked his email account before he filed the CHRO complaint. Because he has not alleged that he opposed an unlawful employment practice, he has also failed to allege that any of Uber's actions were "because of" his opposition. For this reason, I recommend that Mr. Gupte's claims of retaliation under Title VII, the CFEPA, and Section 1981 be dismissed for failure to state a claim upon which relief may be granted.

### 3. Section 1983

Mr. Gupte claims that he was deprived of his civil rights when he was terminated without a "Loudermill hearing." (ECF No. 1 at 2.) This comes from a Supreme Court case, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In *Loudermill*, the plaintiffs were state government employees who argued that they were deprived of their right to due process when they were terminated without hearings. *Id.* at 536-38. The employees brought their action under 42 U.S.C. § 1983, which allows the imposition of civil liability against every "person" who, under color of

state law, deprives a person of any "rights, privileges, or immunities secured by the Constitution and laws . . . ." The Supreme Court found that the employees were entitled to a "pretermination opportunity to respond" before their termination took effect. *Loudermill*, 470 U.S. at 547-48. Because Mr. Gupte claims that he, too, was deprived of a pretermination hearing, the Court reads his complaint as attempting to assert a claim against Uber under Section 1983.

To state a Section 1983 claim, a plaintiff must allege that he was deprived of a "right secured by the Constitution and laws of the United States," and that the deprivation was "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). This is because the "the United States Constitution regulates only the Government, not private parties . . . ." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991). Here, Mr. Gupte is asserting claims against Uber, a private party. A private party like Uber can only be considered a "state actor" if its alleged unconstitutional conduct is "fairly attributable to the state." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). *See also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

All of Mr. Gupte's allegations concern Uber's actions as a private party. He does not allege any state involvement, nor allege any facts that show that Uber acted under color of state law. Since Uber is a private party that did not act under color of state law, it is not liable under Section 1983 and did not have an obligation to give Mr. Gupte a *Loudermill* hearing prior to his termination For this reason, I recommend that Mr. Gupte's Section 1983 claim against Uber be dismissed.

13

## V. CONCLUSION

For the reasons stated in Section III, Mr. Gupte's motion for leave to proceed *in forma pauperis* is granted. And for the reasons stated in Section IV, I recommend that Judge Bolden dismiss all the claims in the complaint. I further recommend, however, that the dismissal be without prejudice to repleading. If my recommendation is accepted, this would mean that Mr. Gupte could file an amended complaint attempting to cure the defects identified in this recommended ruling. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). There may be no cure for those defects, but *pro se* plaintiffs are usually given "leave to amend at least once." *Id.* (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999)).

This is a recommended ruling by a magistrate judge. Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C). If Mr. Gupte wishes to object to my recommendation, he must file that objection with the Clerk of the Court within fourteen days. Fed. R. Civ. P. 72(b)(2); D. Conn. L. Civ. R. 72.2(a). If he does not file this objection within fourteen days, he will not be able to assign as error any defect in this recommended ruling. D. Conn. L. Civ. R. 72.2(a). Failure to file a timely objection will also prevent him from obtaining appellate review. *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *accord Impala v. U.S. Dept. of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

                                                */s/ Thomas O. Farrish*
                                             Hon. Thomas O. Farrish
                                           United States Magistrate Judge