**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| PRADEEP GUPTE,<br>            *Plaintiff,*<br><br>    v.<br><br>UBER TECHNOLOGY,<br>            *Defendant.* | No. 3:24-cv-2037 (VAB) |

**ORDER ADOPTING RECOMMENDED RULING**

On December 20, 2024, Pradeep Gupte ("Plaintiff") filed a Complaint against Uber

Technology ("Defendant"), alleging employment discrimination and retaliation claims. Compl.,

ECF No. 1 (Dec. 20, 2024) ("Compl."). Concurrently, Mr. Gupte moved to proceed *in forma*

*pauperis*. Mot. for Leave to Proceed *in Forma Pauperis*, ECF No. 2 (Dec. 20, 2024).

On January 16, 2025, Mr. Gupte filed a motion to have a "telephone meeting" with the

Court. Mot. for Telephone Meeting, ECF No. 14 (Jan. 16, 2025) ("Mot. for Tele. Meeting").

On January 30, 2025, the case was referred to Magistrate Judge Thomas O. Farrish for

ruling on the motion to proceed *in forma pauperis*. Order Referring Case, ECF No. 18 (Jan. 30,

2025).

On February 2, 2025, Mr. Gupte filed a motion to appoint counsel. Mot. to App. Counsel,

ECF No. 20 ("Mot. to App. Counsel").

Magistrate Judge Farrish issued a Recommended Ruling recommending granting

Plaintiff's motion to proceed *in forma pauperis* and dismissal of Plaintiff's Complaint with leave

to amend. Recommended Ruling, ECF No. 23 (Mar. 24, 2025) ("Recommended Ruling").

1

On April 2, 2025, Mr. Gupte filed an Amended Complaint that included as an attachment an annotated version of Judge Farrish's recommended ruling. Am. Comp., ECF No. 18 (April 2, 2025) ("Am. Compl.").

For the reasons below, Magistrate Judge Farrish's Report and Recommendation is **ADOPTED**.

The motion for leave to proceed in forma pauperis is **GRANTED**.

The Complaint is **DISMISSED** with leave to amend.

The motion for a telephone meeting is **DENIED.**

The motion to appoint counsel is **DENIED.**

Since Mr. Gupte has already filed an Amended Complaint, ECF No. 24, the Clerk of Court is respectfully directed to refer Mr. Gupte's Amended Complaint to Magistrate Judge Farrish for review.

## I.    STANDARD OF REVIEW

If a party objects to a recommended ruling by a magistrate judge, the Court must "determine de novo any part of the magistrate's disposition that has been properly objected to." Fed. R. Civ. Pro. 72(b)(3); *see also* D. Conn. Local Rule 72.2(b) ("In the event of such objection . . . the Judge ultimately responsible shall make a de novo determination of those portions of the proposed decision to which objection is made, and may accept, reject, or modify the recommended ruling in whole or in part.").

Where a party fails to object after receiving clear notice of the consequences of not objecting, the Court may adopt the recommended ruling without *de novo* review unless clear error appears on the face of the record. *See Colvin v. Berryhill*, 734 2 F. App'x 756, 758 (2d Cir. 2018) ("Where, as here, a party receives clear notice of the consequences of not objecting to a

Report and Recommendation, the party's failure to object to any purported error or omission in a magistrate judge's report results in the district court's review only for clear error . . . .").

Filings by pro se plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## II.    DISCUSSION

Construed liberally, Mr. Gupte's Complaint includes three claims: 1) a claim of wrongful termination in violation of Title VII of the Civil Rights Act, the Connecticut Fair Employment Practices Act (the "CFEPA"), Conn. Gen. Stat. § 46a-60, and 42 U.S.C. § 1981; 2) a claim of retaliation in violation of Title VII, CFEPA, and Section 1981; and 3) a Fourteenth Amendment due process claim under 18 U.S.C. § 1983. *See* Recommended Ruling at 7; s*ee also* Compl. at 3 ("Claim I: 1) My civil rights. 2) I did not get any Loudermill Hearing 3) Title VII").

### A.  The Recommended Ruling

Judge Farrish recommends that Mr. Gupte's motion to proceed *in forma pauperis* be granted and that his Complaint be dismissed with leave to amend.

Rather than file a clear objection to the Recommended Ruling, Mr. Gupte filed a copy of several pages of the Recommended Ruling with highlights and comments in the margins. *See* Am. Compl. at 14–20.[1] To the extent Mr. Gupte has intended this filing to act as an objection to the Recommended Ruling, he presents no compelling legal arguments against dismissal of his claims.

---

[1] Because Mr. Gupte did not include page numbers in his filing, the Court relies on page numbers provided by ECF.

### i.   Standard of Review

Mr. Gupte directs the Court to "look at 556 US 662 & 'Bell Atlantic v. Twombly,'" in an apparent objection to the standards applied in the Recommended Ruling to assess the viability of his Complaint. Am. Compl. at 14. The Recommended Ruling, however, properly applies the standards for stating a claim set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g.*, Recommended Ruling at 6 ("A complaint fails to state a claim when it lacks 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" (citing *Iqbal*, 556 U.S. at 678)).

Accordingly, any objection that the Recommended Ruling applies the wrong standard to assess Mr. Gupte's Complaint will be denied.

### ii.   The Title VII Wrongful Termination Claim

Mr. Gupte objects to the recommended dismissal of his Title VII wrongful termination claim. Specifically, Mr. Gupte highlights a portion of the Recommended Ruling referring to the filing of his Equal Employment Opportunity Commission ("EEOC") complaint beyond the 300-day limit, and notes that this requirement is "not jurisdictional" under *Fort Bend County v. Davis*, 587 U.S. 541 (2019). Am. Compl. at 15–16.

Under 42 U.S.C. § 2000e-5(e)(1), a complainant must file a complaint of unlawful employment discrimination with the EEOC within 180 days of a discriminatory act. 42 U.S.C. § 2000e-5(e)(1). If the complainant is filing the complaint in a state, like Connecticut, that has its own anti-discrimination agency, the deadline to submit a EEOC claim is extended to 300 days. *Id.*; *see also Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 190 (D. Conn. 2007) ("In general, Title VII discrimination claims must be filed with the Equal Employment Opportunity Commission ('EEOC') within 180 days of the date on which the alleged unlawful employment

practice occurred. If, however, a claimant has filed a charge of discrimination in a state or locality that has its own anti-discrimination laws and enforcement agency, the time period for filing claims with the EEOC is extended to 300 days from the date of the unlawful practice." (internal citation and quotation marks omitted)).

Mr. Gupte is correct that this time limit is a procedural rule, not a jurisdictional one. *See Fort Bend Cnty.*, 587 U.S. at 551–52 ("Title VII's charge-filing requirement is not of a jurisdictional cast. . . . Instead, Title VII's charge-filing provisions 'speak to . . . a party's procedural obligations.'"). But, to the extent that he interprets the U.S. Supreme Court's decision in *Fort Bend County* as removing Title VII's express time limits, he is mistaken. In that case, the Supreme Court instead only characterized these time limits as a "claim-processing rule [which] may be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 549. In other words, if a defendant in a Title VII action timely raises a failure to comply with Title VII's charge-filing requirement, the issue of timeliness can (and indeed) must be addressed. *See id.* at 552 ("And recognizing that the charge-filing requirement is nonjurisdictional gives plaintiffs scant incentive to skirt the instruction. Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them. A Title VII complainant would be foolhardy consciously to take the risk that the employer would forego a potentially dispositive defense.").

As a result, the time limits are still "mandatory," *id.*, and federal courts should only hear a Title VII claim based on a late EEOC filing when exceptions such as "waiver, estoppel, [or] equitable tolling" apply. *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). As explained in the Recommended Ruling, Mr. Gupte's allegations provide no indication that his EEOC complaint

was timely filed, or that there is any reason for tolling the time limit. *See* Recommended Ruling at 10. Moreover, Mr. Gupte has failed to sufficiently allege a wrongful termination claim regardless of whether his EEOC complaint was timely filed.

To bring a Title VII wrongful termination claim, a plaintiff must allege that "he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Successful claims of wrongful termination must present a causal connection between some discriminatory reason and the termination. *See Quarless v. Brooklyn Botanic Garden Corp.*, 611 F. App'x 28, 29 (2d Cir. 2015); *see also Maines v. Last Chance Funding, Inc.*, No. 2:17-cv-05433 (ADS) (ARL), 2018 WL 4558408, at *15 (E.D.N.Y. Sept. 21, 2018) ("In the causation context, this means the Plaintiffs need only allege a set of facts that makes it 'plausible' that a protected characteristic was a 'motivating factor' in the decision to terminate their employment." (quoting *Fanelli v. New York*, 51 F. Supp. 3d 219, 232 (E.D.N.Y. 2014))).

In his Complaint, Mr. Gupte alleges only that he "was a Uber driver," "was terminated," and that his "civil rights [were] violated." Compl. at 2. He does not allege membership of a protected class or provide any allegations to support the conclusion that any membership of a protected class led to his termination from Uber Technology. Mr. Gupte has thus failed to allege a claim for wrongful termination in violation of Title VII. *See, e.g.*, *Cloutier v. Ledyard Bd. of Educ.*, 575 F. Supp. 276, 289 (D. Conn. 2021) ("Given that Plaintiff does not provide any facts or allegations that his termination was caused by hostility toward his protected status, Defendant's motion to dismiss his wrongful termination claims is granted").

Accordingly, the Court adopts the recommendation to dismiss Mr. Gupte's wrongful termination claim.[2]

### iii.  The Section 1983 Claim

Lastly, in reference to the dismissal of his Section 1983 claim, Mr. Gupte reiterates that he received no "verbal or written notice" in advance of his dismissal from Uber Technology, and that his civil rights were violated because he "did not receive due process." Am. Compl. at 20.

Mr. Gupte alleges that Uber Technology violated his Fourteenth Amendment due process rights under Section 1983 because he did not get a hearing as required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Compl. at 3. Under *Loudermill*, states cannot terminate public employees without constitutional due process because of the employee's property rights in their employment. *Loudermill,* 470 U.S. at 538 ("Respondents' federal constitutional claim depends on their having had a property right in continued employment. If they did, the State could not deprive them of this property without due process." (citations omitted)).

A private employer, by contrast, is not subject to the Constitution and generally cannot be held liable under Section 1983. *See United States v. Int. Broth. of Teamsters*, 941 F. 2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first

---

[2] Mr. Gupte also writes that the "ADAAA" rule applies to his wrongful termination claim, apparently referring to the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). Am. Compl. at 15. It is not clear from his filing what ADAAA "rule" he is referring to, and his Complaint makes no mention of disability discrimination. Title VII makes it unlawful to discriminate based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and does not apply to disability discrimination. Given the ambiguity of Mr. Gupte's statement, and that his Complaint makes no mention of disability discrimination, the Court does not find this citation to the ADAAA to be a valid objection to the Recommended Ruling. *Cf. Owens v. McCall*, 5 Fed. App'x 15, 16 (2d Cir. 2001) ("Although a complaint filed by a pro se litigant is to be liberally construed in his favor, we are no more able than the district court to determine—even under such a liberal construction—the true substance of the plaintiff's claims. Dismissal was therefore appropriate." (internal citation omitted)).

establish that the challenged conduct constitutes 'state action.'"). In rare cases, a private party

can be liable under Section 1983 when that party is "a willful participant in joint activity with the

State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)); *see also Sykes v. Bank of America*, 723

F.3d 399, 406 (2d Cir. 2013) ("A private actor may be held liable under § 1983 only if there is a

sufficiently close nexus between the State and the challenged action that [the] seemingly private

behavior may be fairly treated as that of the State itself." (internal quotation marks omitted)). Mr.

Gupte asserts claims against Uber Technology, a private company, and he provides no

allegations to suggest that Uber Technology engaged in any state action subject to the

Constitution and Section 1983. *See, e.g.*, *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 352

(N.D.N.Y. 2015) ("Therefore, because Plaintiff has failed to allege facts plausibly suggesting

that Defendant and Local 182 are state actors, or were acting under color of state law when her

employment was terminated, Plaintiff has not stated a claim against these parties under §

1983."), *vacated in part on other grounds*, 682 Fed. Appx. 30 (2d Cir. 2017).

Accordingly, the Court will adopt the recommendation to dismiss Mr. Gupte's Fourteenth

Amendment due process claim under Section 1983.

**B. The Motion for A Telephone Meeting**

"As a general rule of thumb, in all but the most exceptional circumstances, ex parte

communications with the court are an extraordinarily bad idea." *United States v. McTier*, No. 05-

cr-401 (ILG), 2006 WL 2707439, at * 1 (E.D.N.Y. Sept. 20, 2006) (quoting *United States v.

Carmichael*, 232 F.3d 510, 517 (6th Cir.2000), *cert. denied*, 532 U.S. 974, (2001)).

Here, Mr. Gupte has filed a motion "to have a 'telephone meeting' with the Honorable

Judge." Mot. for Tele. Meeting at 1. There are no circumstances that suggest *ex parte*

communication with the Court is appropriate. And, to the extent that Mr. Gupte desires a telephone call with the Court to seek legal advice, the Court cannot provide any. *See Torres v. Howell*, No. 3:03-CV-2227 (MRK), 2004 WL 2901539, at *4 (D. Conn. Dec. 6, 2004) ("[A] court, whether through a judge or the court clerk, may not act as an advocate on behalf of a party by . . . providing legal advice.").

Accordingly, the motion for a telephone meeting will be denied.

### C. The Motion to Appoint Counsel

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011); *see also Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) ("There is no requirement that an indigent litigant be appointed pro bono counsel in civil matters, unlike most criminal cases."). A motion for appointment of counsel is properly denied when a district court concludes that a plaintiff's case has little chance for success. *See Leftridge*, 640 F.3d at 69 ("The court properly denies the plaintiff's motion for counsel if it concludes that his chances of success are highly dubious.").

Here, Mr. Gupte's Complaint will be dismissed, and the Court has no indication that any viable claims exist. *See, e.g.*, *Ramic v. AFSA Data,* No. 6:15-cv-01288, 2015 WL 7820594, at *3 (N.D.N.Y. Nov. 4, 2015) ("Even if the Court were not recommending sua sponte dismissal of Plaintiff's Complaint, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed.").

Accordingly, the motion to appoint counsel will be denied without prejudice to renewal.

## III.    CONCLUSION

For the reasons below, Magistrate Judge Farrish's Report and Recommendation is

**ADOPTED**.

The motion for leave to proceed in forma pauperis is **GRANTED**.

The Complaint is **DISMISSED** with leave to amend.

The motion for a telephone meeting is **DENIED.**

The motion to appoint counsel is **DENIED.**

Since Mr. Gupte has already filed an Amended Complaint, ECF No. 24, the Clerk of

Court is respectfully directed to refer Mr. Gupte's Amended Complaint to Magistrate Judge

Farrish for review.

**SO ORDERED** at New Haven, Connecticut, this 18th day of April, 2024.

        /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge